1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              CENTRAL DISTRICT OF CALIFORNIA

10

11   MARCUS VAUGHN, et al.,                Case No.  CV 16-03086-AB (AJWx)

12                     Plaintiffs,         **ORDER RE: MOTIONS IN LIMINE**

13   v.

14   CITY OF LOS ANGELES, et al.,

15                     Defendants.

16

17          Before the Court are the parties' Motions in Limine ("MIL").  The Court heard

18   oral argument on October 20, 2017, and rules as follows.

19   **PLAINTIFFS' MOTIONS IN LIMINE**

20       **1.  Plaintiffs' MIL 1 (Dkt. No. 56) is <u>GRANTED in part and DENIED in part</u>.**

21          This motion seeks to exclude for categories information unknown to defendant

22   Ramirez at the time of the shooting.  The court will address them in turn.

23          Plaintiffs' request to exclude reference to Decedent Redel Jones's ("Decedent")

24   prior criminal history, which consists of two distant citations for failure to appear on a

25   traffic ticket, is **DENIED** as moot because Defendants confirmed that they are not

26   going to introduce such evidence.

27          Plaintiffs' request to exclude Decedent's tattoos, which Ramirez could not see,

28   is **DENIED**.  Plaintiffs do not describe these tattoos, and it does not appear that

Defendants intend to rely on them.  But, according to Defendants, tattoos may be visible on otherwise admissible autopsy photographs.  The motion presents no basis for excluding tattoos that might incidentally be shown to the jury via autopsy photos. At oral argument, Plaintiff explained that a tattoo saying "murda" is visible on a photo, and the parties indicated they would likely be able to avoid using that photo or would edit the tattoo out.  Given the parties' expectation of being able to resolve this issue, this aspect of the motion is **DENIED without prejudice**.

Plaintiffs seek to exclude toxicology reports showing that Decedent had marijuana in her system at the time of the incident on the ground that it is irrelevant. Defendants argue that evidence that Decedent had marijuana in her system is relevant to substantiate Defendants' argument that she was acting erratically.  But merely having marijuana in one's system does not establish that a person is under the influence of it at the time, and Defendants do not appear to have expert testimony that the positive test showed Decedent was actually under the influence at the time of the shooting.  As such, that Decedent had marijuana in her system is not relevant.  This aspect of the motion is **GRANTED**.

Plaintiffs seek to exclude details of the robbery that were unknown to Ramirez at the time of the shooting, including but not limited to testimony by the pharmacy clerk, video of the robbery, still images from the video of the robbery, 911 calls concerning the robbery, radio traffic concerning the robbery that Ramirez did not hear, the note Decedent handed to the clerk, which was retrieved from Decedent's clothing after the shooting, and the pharmacy clerk's handwritten note recording the incident. MIL 1, 2:13-19.  Plaintiffs argue that this evidence is not relevant to the reasonableness of Ramirez's used of force.  The Court will consider this evidence item by item.

Defendants argue that details relating to Decedent's use of a knife in the robbery are relevant to corroborate Ramirez's testimony that Decedent had a knife, used her right hand to pull it from her waistband (as she did with the pharmacy clerk),

pointed it at Ramirez (as she did towards the pharmacy clerk), and knew how to use a knife to get what she wants.  This evidence is not meaningfully corroborative of Ramirez's testimony.  As the Court understands the evidence, Plaintiffs are not going to dispute that Jones had a knife.  It is not clear yet whether Plaintiffs will contest that Jones pulled the knife from her waistband during the encounter with Ramirez, but that she did so during the robbery is not sufficiently corroborative of Ramirez's testimony to outweigh the undue prejudice it risks.  Defendants argued as though the robbery establishes a habit or modus operandi, but this single episode cannot establish either.  The Court therefore **GRANTS** the motion to exclude evidence relating to Jones's use of the knife during the robbery.

As for Decedent's "I have a gun note," this does not appear relevant to Ramirez's use of force, so it is excluded.   This part of the motion is **GRANTED**.

As for the 911 calls and the radio communications, the briefing does not describe them sufficiently to allow the court to rule, so this aspect of the motion is **DENIED without prejudice**.

**2.  Plaintiffs' MIL 2 (Dkt. No. 57) is <u>GRANTED</u>.**

Plaintiffs seek to exclude from evidence that the Los Angeles County District Attorney's Office decided not to bring criminal charges against Ramirez on the ground that it is irrelevant.  The Court agrees.  That Office's determination to not press criminal charges is not relevant to whether Ramirez used reasonable force in this civil case.  Furthermore, such evidence would be confusing and unfairly prejudicial.  This motion is **GRANTED**.

**3.  Plaintiffs' MIL 3 (Dkt. No. 58) is <u>GRANTED</u>**

Plaintiffs seek to exclude from evidence that percipient witness Courtyana Franklin supports or is involved with Black Lives Matter for lack of foundation, irrelevance, prejudice, and it would be unjust to permit Defendants to suggest that one who supports Black Lives Matter is inherently biased against police, which appears to be what Defendants plan to argue at trial.  All of these grounds have merit.   As for

1    foundation, when asked if she is a member of Black Lives Matter, Franklin responded
2    "I don't pay dues or anything like that, but I'm supportive of the organization, if that
3    makes sense."  MIL 3, 3:12-14.  This simply does not establish a connection to Black
4    Lives Matter sufficient to establish that Franklin is aligned with all of its positions.
5    Nor would it be fair to characterize Black Lives Matter as espousing anti-police bias.
6    This entire line of questioning is primed to inflame the jury and appeal to prejudice—
7    both sympathy and antipathy.  Thus, whatever marginal relevance Franklin's
8    "support" of Black Lives Matters bears here, it is far outweighed by Rule 403
9    concerns. The motion is **GRANTED**.

10        **4. Plaintiffs' MIL 4 (Dkt. No. 59) is <u>GRANTED</u>.**

11        Plaintiffs seek to exclude evidence that when she was 16 years old, Franklin
12    made a false statement to her school therapist that her mother pushed her and was
13    abusive.  Plaintiffs assert this incident is inadmissible character evidence, irrelevant,
14    and unfairly prejudicial.  Defendants argue that the incident is admissible as
15    impeachment under Rule 608, which allows examination of a witness regarding
16    specific instances of conduct "if they are probative of the character for truthfulness or
17    untruthfulness." Fed. R. Evid. 608(b)(1).  However, the Advisory Committee Notes
18    acknowledge that with such evidence, "the possibilities of abuse are substantial," so
19    such instances must not be remote in time, and must be considered in light of the
20    safeguards of Rule 403 (undue prejudice, etc.) and Rule 611 (barring harassment and
21    undue embarrassment).  Franklin is now 23, and she made the false statement when
22    she was 16—which is 7 years ago.  She also explained that she made the false
23    statement in the context of a teenage argument with her mother, and did not
24    understand the consequences then. This teenage episode is simply far too remote in
25    time to be probative of Franklin's character as an adult 7 years later.   The motion to
26    exclude this evidence is **GRANTED**.

27

28

1  **5. Plaintiffs' MIL 5 (Dkt. No. 60) is <u>GRANTED in part and DENIED IN</u>**

2  **<u>PART</u>.**

3      Plaintiffs seek to exclude and limit the testimony of Defendants' police

4  practices expert James Katapodis on an array of grounds.

5      First Plaintiffs fault Katapodis for basing his opinion on only limited

6  documents, in particular, on only the Defendants' depositions and reports; for

7  "unjustifiably extrapolat[ing] similarities between eye-witness accounts of the incident

8  that corroborate Defendant's account," MIL 5 7:12-16; for not accounting for obvious

9  alternative explanations; and for relying on undisclosed factual assumptions  or failing

10  to disclose specific supporting policies and procedures.  The Court has reviewed

11  Katapodis's qualifications and his expert report in light of these objections, and finds

12  that they go to weight, not admissibility.

13      Plaintiffs also argue that Katapodis's opinions impermissibly go to the ultimate

14  issues in this case—whether Ramirez's use of force was reasonable.  This objection

15  has merit.  Rule 704 states that "[a]n opinion is not valid just because it embraces an

16  ultimate issue."  Fed. Rule Evid. 704(a).  But courts have distinguished between

17  ultimate legal issues—on which experts may not opine—and ultimate factual issues.

18  *See Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) (testimony that officers'

19  conduct was not "justified under the circumstances," not "warranted under the

20  circumstances," and "totally improper" amounted to testimony about the "ultimate

21  legal conclusion" and should have been excluded).  Likewise here, Katapodis's

22  conclusions that Ramirez's use of force was reasonable and appropriate are legal

23  conclusions and he is barred from so testifying.

24      Plaintiffs also fault Katapodis for relying on Thomas Day Sr.'s hearsay

25  statements which they claim were elicited by leading questions.  But under Rule 703,

26  an expert can rely on kinds of facts or data reasonably relied upon by expert in this

27  field, including hearsay.  Katapodis's reliance on Day Sr.'s hearsay statements does

28  not render his opinion inadmissible.  Plaintiffs are also concerned that Katapodis will

1  repeat Day Sr.'s hearsay testimony in court.  However, Rule 703 permits an expert to

2  disclose inadmissible facts or data "if their probative value in helping the jury evaluate

3  the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 403.  In

4  light of this rule, the Court will reserve ruling on specific testimony as it arises at trial.

5  Finally, the Court overrules Plaintiffs' Rule 403 objection.

6      Accordingly, Katapodis Is barred from opining on the ultimate legal issue of

7  whether Ramirez's used of force was reasonable.  The motion is therefore

8  **GRANTED in part and DENIED in part**.

9      **6. Plaintiff's MIL 6 (Dkt. No. 61) is <u>GRANTED in part and DENIED in part</u>.**

10      Plaintiffs seek to exclude the testimony of Defendants' forensics consultant

11  Rocky Edwards on several grounds.  Having considered the papers and further

12  argument of counsel, the Court finds that Edwards may testify as to his opinions

13  reflected in his report.  However, the still images presented in that report are likely to

14  unduly prejudice Plaintiffs.  Therefore, the motion is **DENIED** as to Edwards's

15  opinion testimony, but **GRANTED** as to the images, subject to further proof at trial.

16

17  **<u>DEFENDANTS' MOTIONS IN LIMINE</u>**

18      **1. Defendants' MIL 1 (Dkt. No. 47) is <u>GRANTED</u>.**

19      Defendants move to trifurcate this trial into a liability phase, a damages phase,

20  and a *Monell* phase.  The motion is **GRANTED** and the Court hereby **ORDERS** that

21  the trial will be trifurcated into a liability phase, a damages phase, and a *Monell* phase.

22  The parties are **ORDERED** to meet and confer on appropriate special verdict forms.

23      **2. Defendants' MIL 2 (Dkt. No. 48) is <u>DENIED</u>.**

24      Defendants move to exclude any information "concerning administrative

25  proceedings, including findings and the manner in which they were conducted,

26  involving any of the individual LAPD officers." MIL 2, 2:4-7.  Because Defendants

27  have not identified this evidence with any specificity, the Court **DENIES the motion**

28  **without prejudice**.

1

**3. Defendants' MIL 3 (Dkt. No. 50) is <u>DENIED</u>.**

Defendants move to exclude "other incidents (including the so-called 'Rampart Scandal', Consent Decree, Christopher Commission, the Rodney King incident and so-called 'Code of Silence'), lawsuits, claims, verdicts, settlements, or judgments involving the City of Los Angeles, the Los Angeles Police Department or any of the individual Defendants."  MIL 3, 2:7-11.  Other incidents are generally relevant to Plaintiffs' *Monell* theory of liability.  Certainly, at some point such evidence becomes cumulative or excludable under Fed. R. Evid. 403  It is not clear which particular other incidents Plaintiffs intend to rely on, so the court will assess their admissibility as objections are made at trial.  This motion is **DENIED without prejudice**.

**4. Defendants' MIL 4 (Dkt. No. 51) is <u>DENIED</u>.**

Defendants move to preclude Plaintiffs' police practices expert Roger Clark "from testifying or offering any opinions that have no factual basis or beyond his area of expertise, including but not limited to: (1) the deployment and/or use of a Taser and the LAPD's policies and procedures regarding the Taser; (2) bullet trajectories; (3) hobble restraint device ('HRD'); and (4) compelled blood draw."  MIL 4 1:28-2:4.  Defendants argue that Clark is not qualified to testify on these matters, and that his opinions are unreliable.  Defendants misstate Clark's opinions on these matters.  The Court has reviewed the expert report, Clark's qualifications, and his submitted deposition testimony, and finds that he is in fact qualified to give expert testimony on these matters.  Defendants' objections that Clark's opinions are unreliable go to their weight, not their admissibility.  The motion is **DENIED**.

**5. Defendants' MIL 5 (Dkt. No. 52)  is <u>DENIED as Moot</u>.**

Defendants move to exclude evidence relating to Decedent Redel Jones's mental status, disorders, treatments, and medications— in particular, Jones had bi-polar disorder and was prescribed medication for them—on the ground that Defendant Ramirez did not know Jones had any mental disorders so this evidence is not relevant to his use of force.  But Plaintiffs argue that based on Jones's appearance and conduct,

1   Ramirez should have recognized that Jones was mentally ill and should have engaged

2   her in accordance with LAPD training on how to interact with the mentally ill.  As

3   such, they argue, Jones's mental status is relevant.  At oral argument, Plaintiff's

4   counsel stated that he would not seek to introduce evidence of Ms. Jones's mental

5   status, thereby mooting the motion.  On that basis, the motion is **DENIED** as moot.

6

7          **Finally, the Court instructs both sides to instruct their expert witnesses to**

8   **not opine on the ultimate legal question of whether Ramirez's use of force was**

9   **reasonable or unreasonable.**

10

11  **IT IS SO ORDERED.**

12

13  Dated:  October 30, 2017          _____

14                                    HONORABLE ANDRÉ BIROTTE JR.
                                      UNITED STATES DISTRICT COURT JUDGE
15

16

17

18

19

20

21

22

23

24

25

26

27

28